IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DOUGLAS J. WINSTON,

         Petitioner,               No. CIV S-00-0156 FCD GGH P

    vs.

CALIFORNIA BOARD OF
PRISON TERMS, et al.,

         Respondent.          FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted in 1976 of two counts of first degree murder, kidnap for robbery and three counts of first degree burglary.  This action is proceeding on the amended petition filed March 8, 2001, which raises two claims: 1) petitioner has a liberty interest in having a parole date set; and 2) the Board of Prison Term (BPT) regulations contain vague criteria for determining suitability.  Petitioner is specifically challenging the March 31, 1998, decision by the BPT finding him unsuitable.

/////

/////

1           On March 27, 2002, the district court granted respondent's motion to dismiss.  On

2 March 21, 2005, the Ninth Circuit Court of Appeals reversed the district court's order regarding

3 petitioner's claim alleging vague criteria for suitability.  On March 29, 2005, the court ordered

4 respondent to file an answer addressing the remaining claim.  On April 8, 2005, respondent filed

5 an answer.  On June 1, 2005, petitioner filed a traverse.  After carefully reviewing the record, the

6 court recommends that the petition be denied.

7 II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

8           The Antiterrorism and Effective Death Penalty Act (AEDPA)  applies to this

9 petition for habeas corpus which was filed after the AEDPA became effective.  Neelley v. Nagle,

10 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 117 S. Ct. 2059 (1997).  The AEDPA

11 "worked substantial changes to the law of habeas corpus," establishing more deferential

12 standards of review to be used by a federal habeas court in assessing a state court's adjudication

13 of a criminal defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263

14 (9th Cir. 1997).

15           In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

16 Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

17 for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

18 between "contrary to" clearly established law as enunciated by the Supreme Court, and an

19 "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

20 to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

21 Court on a point of law, or (2) if the state court case is materially indistinguishable from a

22 Supreme Court case, i.e., on point factually, yet the legal result is opposite.

23           "Unreasonable application" of established law, on the other hand, applies to

24 mixed questions of law and fact, that is, the application of law to fact where there are no factually

25 on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

26 Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

1    AEDPA standard of review which directs deference to be paid to state court decisions.  While the

2    deference is not blindly automatic, "the most important point is that an *unreasonable* application

3    of federal law is different from an incorrect application of law....[A] federal habeas court may not

4    issue the writ simply because that court concludes in its independent judgment that the relevant

5    state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

6    that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

7    1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

8    objectively unreasonable nature of the state court decision in light of controlling Supreme Court

9    authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

10           The state courts need not have cited to federal authority, or even have indicated

11    awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

12    Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

13    contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

14    unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

15    occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

16    established Supreme Court authority reviewed must be a pronouncement on constitutional

17    principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

18    binding only on federal courts.  Early v. Packer, 123 S. Ct. at 366.

19           However, where the state courts have not addressed the constitutional issue in

20    dispute in any reasoned opinion, the federal court will independently review the record in

21    adjudication of that issue.  "Independent review of the record is not de novo review of the

22    constitutional issue, but rather, the only method by which we can determine whether a silent state

23    court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

24    2003).

25           In reviewing a state court's summary denial of a habeas petition, the court "looks

26    through" the summary disposition to the last reasoned decision.  Shackleford v. Hubbard, 234

3

F.3d 1072, 1079 n. 2 (9th Cir. 2000)(citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04, 111 S.Ct. 2590 (1991)).  In the instant case, the San Joaquin Superior Court issued a reasoned decision denying petitioner's habeas petition which raised the vagueness claim. Answer, Exhibit 4. The California Court of Appeal and California Supreme Court summarily denied petitioner's habeas corpus petitions.  Answer, Exhibit 4; Petition, Exhibit F.  Accordingly, the court looks through to the reasoned decision of the Superior Court.

III.  <u>Discussion</u>

Although due process does not require the existence of a parole scheme, California has established one.  Not all of the myriad procedures of the parole setting system are pertinent here.  The court sets forth that part of the statutory section that is pertinent:

(a) In the case of any prisoner sentenced pursuant to any provision of law, other than Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, the Board of Prison Terms shall meet with each inmate during the third year of incarceration for the purposes of reviewing the inmate's file, making recommendations, and documenting activities and conduct pertinent to granting or withholding postconviction credit.  One year prior to the inmate's minimum eligible parole release date a panel consisting of at least two commissioners of the Board of Prison Terms shall again meet with the inmate and shall normally set a parole release date as provided in Section 3041.5. The panel shall consist solely of commissioners or deputy commissioners from the Board of Prison Terms.

The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the prisoner was sentenced and other factors in mitigation or aggravation of the crime.

Cal. Penal Code § 3041.

In compliance with the statutory mandate, the Board of Prison Terms issued regulations which guide it in finding prisoners convicted of life offenses with parole eligibility for parole setting.  Cal. Code Regs. tit. 15, § 2402 sets forth the criteria for determining whether an inmate is suitable for parole.  Section 2402(a) provides that regardless of the length of time

1   served, a prisoner shall be found unsuitable for and denied parole if in the judgment of the panel

2   the prisoner will pose an unreasonable risk of danger to society if released from prison.

3          Section 2402(c) sets forth the circumstances tending to show unsuitability.  The

4   court lists those of significance here:

5          (1) Commitment Offense.  The prisoner committed the offense in
       an especially heinous, atrocious or cruel manner.  The factors to be
6          considered include:

7          (A) Multiple victims were attacked, injured or killed in the same or separate
       incidents.

8

9          (B) The offense was carried out in a dispassionate and calculated
       manner, such as an execution-style manner.

10          (C) The victim was abused, defiled or mutilated during or after the offense.

11          (D) The offense was carried out in a manner which demonstrates an
       exceptionally callous disregard for human suffering.

12

13          (E) The motive for the crime is inexplicable or very trivial in
       relation to the offense.

14          (2) Previous Record of Violence. The prisoner on previous occasions inflicted or
       attempted to inflict serious injury on a victim, particularly if the prisoner
15          demonstrated serious assaultive behavior at an early age.

16          (3) Unstable Social History.  The prisoner has a history of unstable
       or tumultuous relationships with others.

17

18          (4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted
       another in a manner calculated to inflict unusual pain or fear upon the victim.

19          (5) Psychological Factors.  The prisoner has a lengthy history of severe mental
       problems related to the offense.

20

21          (6) Institutional Behavior.  The prisoner has engaged in serious misconduct in
       prison or jail.

22          Section 2402(d) sets forth the circumstances tending to indicate suitability:

23          (1) No Juvenile Record.  The prisoner does not have a record of
       assaulting others as a juvenile or committing crimes with a
24          potential of personal harm to the victims.

25          (2) Stable Social History.  The prisoner has experienced reasonably
       stable relationships with others.

26

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for the Crime.  The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome . . .

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

In order to put the instant claim in context, the court will first set forth the factual background of petitioner's offense as summarized at the March 31, 1998, hearing.  This summary does not appear to be disputed:

On December the 20th, 1974, the four foot, 11 inch, 90 pound body of the victim, Elsie Puttchoff, P-U-T-T-C-H-O-F-F, was discovered at her residence.  The residence had been burglarized and ransacked by inmate Winston and crime partner, Michael Jerome Lawrence.  Several personal were [sic] items removed from the residence.  The victim's death was caused by multiple stab wounds which were inflicted by her kitchen knife by inmate Winston.  That was count seven.  The body of a 24 year old victim, James Mumsford, M-U-M-S-F-O-R-D, was discovered on December the 29th, 1974, at approximately 7:30 a.m. in the alley behind 6011 West Boulevard.

*****

The officers went to his residence, notified next of kin and found the body of his wife who had [sic] murdered and raped.  Both victims had been shot in the back of the head with a 38 caliber pistol.  Investigation disclosed that inmate Winston had secured a 38 revolver from Arlee Atkins, that's A-R-L-E-E, A-T-K-I-N-S, on count eight.  On 1/1/75, inmate Winston and three codefendants entered a market with the intention of robbery and shot the owner in the abdomen and left buttock, count ten.  On 1/7/75, Winston and three codefendants removed clothing, food

1    and a 19 inch television from a home at 3455 West 74th Street in Los Angeles,
2    count 11.  Then on 1/8/75, victim heard his dog barking, grabbed a gun, and went
     to the back of his residence.  He observed a man coming through the door with a
     rifle.  The victim shot the man with his revolver.  The man returned his fire.
3    Another man attempted to grab the victim's gun and a struggle ensued.  The
     victim was hit on the head with the rifle butt.  According to police investigations,
4    Winston and two codefendants committed the burglary, taking nine hundred
     dollars in cash and it was the inmate Winston who struck the victim in the head.

5

6    Answer, Exhibit 4, pp. 11-12.

7            The 1998 panel found petitioner unsuitable for parole on the following four

8    grounds.[1]  First, the panel found that petitioner's offenses were carried out in a manner which

9    demonstrated a callous disregard for human suffering.  Answer, Exhibit 4, p. 30; §2402(c)(1)(D).

10   Second,  petitioner's offenses involved multiple victims.  Answer, Exhibit 4, p. 30;

11   §2402(c)(1)(A).  Third, the panel found that petitioner had a previous record of violence based on

12   his 1970 murder conviction as a juvenile.  Answer, Exhibit 4, pp. 13, 30; § 2402(c)(2).  Fourth,

13   the panel found that petitioner had an unstable social history based on his persistent pattern of

14   tumultuous relationships and criminal behavior.  Answer, Exhibit 4, p. 31; § 2402(c)(3).  The

15   BPT summarized petitioner's prior criminal record as follows:

16           ...[P]rior record as a juvenile in February of '68 for burglary; 4/18 of '68, he was
             convicted on burglary and sent to camp.  December '68, he was arrested for auto
17           theft; February l '69 for burglary.  On July of '69, he was arrested for battery in
             which his mother was the victim of that crime.  In September of '69 he was
18           arrested for armed a [sic] robbery, was sent to a foresting camp where he was
             released.  2/16 of '70.  7/70, he was arrested and convicted on a first degree
19           murder and was sent to CYA.

20   Answer, Exhibit 4, pp. 12-13.

21           A statute (or regulation) is void for vagueness "if it fails to give adequate notice to

22   people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and

23

24           [1] In its decision, the BPT stated that petitioner has previously sexually assaulted another
     person.  Answer, Exhibit 4, p. 30.  At the hearing, the Deputy District Attorney stated that
25   petitioner had raped the 78 year old woman he murdered in 1970.  Id., p. 24.  Because the panel
     did not discuss in detail the 1970 offense, the court does not find that it found petitioner
26   unsuitable because he had committed a sexually sadistic offense. § 2402(c)(4).

1   discriminatory enforcement." <u>United States v. Doremus</u>, 888 F.2d 630, 634 (9th Cir. 1989).  The

2   threshold question in a vagueness challenge is "whether to scrutinize the statute for intolerable

3   vagueness on its face or whether to do so only as the statute is applied in a particular case."

4   <u>Schwartzmiller v. Gardner</u>, 752 F.2d 1341, 1346 (9th Cir. 1984).

5          Where speech or other constitutionally protected conduct is not the subject of a

6   statute or regulation and is not otherwise implicated in the case and if related constitutional rights

7   are not expressly invoked in a challenge to facial validity, the court need only examine the

8   vagueness challenge under the facts of a particular case and decide whether, under a reasonable

9   construction of the statute or regulation, the conduct in question is prohibited.  <u>United States v.</u>

10  <u>Hogue</u>, 752 F.2d 1503, 1504 (9th Cir. 1985).  Finally, "[i]n scrutinizing a statute for intolerable

11  vagueness as applied to specific conduct, courts must 'take the statute as though it read precisely

12  as the highest court of the state has interpreted it."  <u>Schwartzmiller</u>, 752 F.2d at 1348.

13         In the instant case, speech is in no way implicated.  Accordingly, the court will

14  determine whether, under a reasonable construction, petitioner had notice that the at-issue factors

15  would apply to him based on the circumstances of his commitment offense.

16         The factors set forth in § 2402(c) used by the BPT to determine whether the

17  prisoner committed his offense in an especially heinous, atrocious or cruel manner are objective,

18  i.e. easily verifiable, and subjective, i.e. based on the opinions of the decision-maker.  As will be

19  discussed below, because the objective factors used by the BPT to find petitioner unsuitable were

20  easily verifiable, petitioner had reasonable notice that they would apply to him.  However,

21  because the subjective factors were not easily understood, the court finds that petitioner did not

22  have notice that they would apply to him.

23         The BPT found petitioner unsuitable pursuant § 2402(c)(1)(A), which provides

24  that the existence of multiple victims tends to show unsuitability.  The existence of multiple

25  victims is an objective factor which may be easily verified.  Petitioner had reasonable notice that

26  this factor would apply to him based on the circumstances of his commitment offenses.

1   Accordingly, this factor is not unconstitutionally vague.

2           The BPT also found petitioner unsuitable pursuant to § 2402(c)(2) which provides

3   that a previous record involving infliction or attempted infliction of serious injury, particularly at

4   a young age, tends to show unsuitability.  As discussed above, petitioner was convicted of

5   murder as a juvenile.  Whether a prisoner has a previous record involving infliction or attempted

6   infliction of serious injury is an objective factor which is easily verifiable.  Petitioner had

7   reasonable notice that this factor would apply to him.  Accordingly, this factor is not

8   unconstitutionally vague.

9           The BPT found petitioner unsuitable pursuant to § 2402(c)(3) which provides that

10   a history of unstable or tumultuous relationships with others tends to show unsuitability.  The

11   BPT apparently based this finding on petitioner's criminal history as no other discussion

12   regarding petitioner's social history occurred during the portion of the hearing when the BPT

13   announced its decision as to this factor

14           After reviewing California case law, this court can find no clear definition of what

15   constitutes an unstable social history pursuant to § 2402(c)(3).  The court has found several cases

16   which have found that the prisoner's criminal history *in addition to* other factors could constitute

17   an unstable social history.  For example, in <u>In Honesto</u>, 130 Cal. App. 4th 81, 29 Cal. Rptr. 3d

18   653 (2004), the California Court of Appeal found that the prisoner's 21 misdemeanor

19   convictions, failure on probation, failure to complete high school, unemployment and history of

20   alcohol abuse supported the BPT's finding that the prisoner had an unstable social history.  130

21   Cal. App. 4th at 97, 29 Cal. Rptr. 3d 653 at 664.  In <u>In re Scott</u>, 119 Cal. App. 4th 871, 15 Cal.

22   Rptr. 3d 32 (2004) the California Court of Appeal found that the prisoner did *not* have an

23   unstable social history because he had no history of substance abuse, no medical or psychiatric

24   problems, an excellent employment history, and no arrests or charges other than those stemming

25   from the instant offense.  119 Cal. App. 4th 895, 15 Cal. Rptr. 3d at 49.

26   /////

1    In the unpublished case of In re Bush, No. H024715, 2003 WL 21246781 (2003),

2    the California Court of Appeal found that the BPT erred by citing the prisoner's criminal history

3    as showing an unstable social history.  The state appellate court stated that while the prisoner's

4    criminal history was a proper factor tending to show unsuitability under other sections of the

5    regulations which specifically addressed criminal history, the BPT could not "double count" the

6    prisoner's criminal history to find him unsuitable for having an unstable social history.  In

7    analyzing challenges to statutes or regulations on vagueness grounds, the court may consider

8    unpublished state court opinions.  Nunez by Nunez, 114 F.3d 935, 943 n. 4 (9th Cir. 1997).

9    Based on the cases cited above, it is fairly clear that California courts would not

10   find that a prisoner had an unstable social history based on their criminal history alone.  For that

11   reason, the court finds that petitioner did not have adequate notice that this factor would apply to

12   him.

13   Finally, the BPT found petitioner unsuitable on grounds that offense was carried

14   out in a manner which demonstrated an exceptionally callous disregard for human suffering. §

15   2402(c)(1)(D).  Two recent California Supreme Court cases discussed the standards the BPT may

16   use in finding a prisoner unsuitable for parole based on the subjective parole suitability criteria

17   concerning the circumstances of the commitment offense, such as § 2402(c)(1)(D).

18   In In re Rosenkrantz, 29 Cal. 4th 616, 683, 128 Cal. Rptr. 2d 104, 161 (2002), the

19   California Supreme Court stated that in order for the BPT to find a petitioner unsuitable based on

20   the circumstances of the crime, the murder had to be "particularly egregious."  In Rosenkrantz,

21   the California Supreme Court reasoned that,

22

23              In some circumstances, a denial of parole based upon the nature of the offense
               alone might rise to the level of a due process violation–for example where no
24              circumstances of the offense reasonably could be considered more aggravated or
               violent than the minimum necessary to sustain a conviction for that offense.
25              Denial of parole under these circumstances would be inconsistent with the
               statutory requirement that a parole date normally shall be set "in a manner that

26   \\\\\

10

1  will provide uniform terms for offenses of similar gravity and magnitude in
   respect to their threat to the public..."

2

3  29 Cal. 3d at 683, 128 Cal. Rptr. 2d at 161.

4          In In re Dannenberg, 34 Cal. 4th 1061, 1095, 23 Cal. Rptr. 3d 417, 440 (2005) the

5  California Supreme Court changed the standard set forth in Rosenkrantz so that the BPT could

6  find a petitioner unsuitable for parole based on the circumstances of the crime so long as the

7  violence or viciousness of the inmate's crime was "more than minimally necessary to convict

8  him of the offense for which he is confined."  Of course, as the dissent in Dannenberg pointed

9  out, this standard is completely unreviewable.  34 Cal. 4th at 1102, 23 Cal. Rptr. 3d at 446.  The

10 minimal elements of the crime are simply that a person dies at the hands of another with the

11 perpetrator exhibiting the requisite intent.  *Any* fact in addition to this could be one viewed as

12 "more than minimally necessary to convict."  For example, one BPT panel may believe that use

13 of a knife per se causes undue suffering; another may believe use of any weapon where death is

14 not instantaneous, probably the vast majority of murders, exhibits callousness.  A conclusion can

15 easily be reached by those who want to claim that the facts of any murder are such that they

16 prove more than those facts minimally necessary for a conviction.

17         The subjective criteria for parole suitability related to the circumstances of the

18 commitment of the offense were difficult enough to apply in the first place just based on their

19 wording, yet as worded with the Rosenkrantz definition of "particularly egregious," an inmate

20 and a BPT official would have sufficient understanding to apply the regulatory sections.  That is,

21 generally, an ax murder accompanied by death could easily be viewed as "particularly egregious"

22 because such murders are clearly out of the norm, i.e., fortunately they do not happen with great

23 frequency and they involve a more callous disregard for life and suffering.  Although every

24 murder is tragic and most senseless in retrospect, a shooting arising out of the passions of a

25 longstanding simmering dispute would not normally appear to fit the egregious category.  But,

26 according to Dannenberg, every murder could fit the category "more than minimally necessary to

11

1  convict" because there is no set of "minimally necessary circumstances" (as opposed to required

2  elements) set forth in the law.  No person could actually know how the regulation would be

3  applied in a particular case because application is so arbitrary, and depends entirely on the

4  subjective, personal opinions of the decisionmakers.  For these reasons, the court finds that

5  "gravity" regulations, including §2402(c)(1)(D) (offense carried out in a manner showing

6  exceptionally callous disregard for human suffering), have become indecipherable in terms of

7  their application—they can mean anything to anybody.  That is unconstitutional vagueness.

8          Although the court has found that two of the regulations relied on by the BPT to

9  find petitioner unsuitable are constitutionally vague, the petition should be denied because the

10  BPT also relied on two other regulations which are not unconstitutionally vague.  Because the

11  denial of this claim by the Superior Court was not an unreasonable application of clearly

12  established Supreme Court authority, the petition should be denied.

13          Finally, respondent argues that the instant petition should be denied as moot

14  because petitioner has had subsequent parole suitability hearings.  Under Article III, § 2 of the

15  Constitution, an action is moot if it no longer presents a case or controversy.  "Once a convict's

16  sentence has expired, however, some concrete and continuing injury other than the now-ended

17  incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit

18  is to be maintained."  Spencer v. Kemna, 523 U.S. 1, 7, 118 S. Ct. 978, 983 (1998).

19          Petitioner is still in custody as a result of the 1998 suitability hearing.  That he has

20  had suitability hearings since that time does not render his challenge to the 2001 hearing moot.

21  See Hubbart v. Knapp, 379 F.3d 773 (9th Cir. 2004) (expiration of SVP commitment term did

22  not moot petitioner's case regarding the expired commitment proceedings even though new

23  proceedings had been commenced).

24          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

25  a writ of habeas corpus be denied.

26  \\\\\

1          These findings and recommendations are submitted to the United States District

2    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3    days after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6    shall be served and filed within ten days after service of the objections.  The parties are advised

7    that failure to file objections within the specified time may waive the right to appeal the District

8    Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9    DATED: 8/15/05

10

11                                        /s/ Gregory G. Hollows

12                                      GREGORY G. HOLLOWS
                                        UNITED STATES MAGISTRATE JUDGE

13   ggh:kj
     win156.157

14

15

16

17

18

19

20

21

22

23

24

25

26