UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DOUGLAS J. WINSTON,

Petitioner,

v.

CALIFORNIA BOARD OF PRISON TERMS, et al.,

Respondents.

NO. S-00-0156 FCD GGH P

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on review of the findings and recommendations ("F&R") of the magistrate judge,[1] filed August 15, 2005, addressing a petition for a writ of habeas corpus based upon claims relating to parole. The Ninth Circuit previously remanded the case, directing the court to consider petitioner's vagueness challenges to the statutory language

---

[1] This matter was referred to a United States magistrate judge pursuant to 28 U.S.C. section 636(b)(1)(B) and Eastern District Local Rule 72-302.

guiding parole decisions. Petitioner, Douglas J. Winston, and respondent, the California Board of Prison Terms ("BPT" of "board"),[2] filed objections to the magistrate judge's findings and recommendations. For the reasons set forth below, the court does not adopt the findings and recommendations in their entirety; however, the court concurs with the magistrate judge's denial of petitioner's request for a writ of habeas corpus.

**BACKGROUND**

The court adopts the factual and procedural background set forth by the magistrate judge in his findings and recommendations. (See F&R, filed Aug. 15, 2005, at 6-7.)

**STANDARD**

When timely objections to findings by a magistrate judge are filed, the district court must conduct a *de novo* determination of the findings and recommendations as to issues of law. 28 U.S.C. § 636(b)(1). The district court may adopt, reject, or modify in part or in full the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). For the reasons set forth below, the court adopts the magistrate's recommendation, but modifies his findings.

**ANALYSIS**

Petitioner Winston challenges the March 31, 1998, decision by the BPT, which found him unsuitable for parole. Winston raises two claims in his amended petition for a writ of habeas corpus, filed March 8, 2001: (1) petitioner has a liberty interest in having a parole date set; and (2) the BPT regulations contain vague criteria for determining prisoner suitability for parole. (See F&R at 1).

---

[2] The BPT is now known as the Board of Parole Hearings.

On March 27, 2002, the court adopted the previous F&R of the magistrate judge, which found that petitioner did not have a liberty interest in having a parole date set under Cal. Pen. Code § 3041. The Ninth Circuit reversed, based upon its holding in Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2005), that every inmate has "a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process Clause." Winston v. BPT, Slip. Op. 02-15963 (9th Cir., filed Feb. 24, 2005). The Ninth Circuit therefore remanded the case for consideration of Winston's claim that the language contained in parole suitability regulation § 2402(c)(1) is unconstitutionally vague. Id.

**A. Liberty Interest in Parole**

The Ninth Circuit has found that the California parole statute codified in § 3041 of the Penal Code gives rise to a cognizable liberty interest in release on parole. Biggs, 334 F.3d at 914-15; McQuillon v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). The California Supreme Court has also held that prisoners have a protected liberty interest in parole under the due process protections of the California Constitution. In re Rosenkrantz, 29 Cal. 4th 616, 655-58 (2002). However, in January 2005, the California Supreme Court issued its opinion in In re Dannenberg, 34 Cal. 4th 1061 (2005), which respondents contend construe California's parole regulations in such a manner as to preclude the finding of a protected liberty interest in parole. Because of the California Supreme Court's decision in Dannenberg, the court will also address petitioner's claim that he has a federal

/////

liberty interest in having a parole date state, in addition to his vagueness challenges.

The court is not persuaded by respondent's discussion of Dannenberg. The Dannenberg court's analysis of the language and structure of both §§ 3041(a) and 3041(b) calls into question the creation of a cognizable federal liberty by the California parole statute. However, the issue presented to the Dannenberg court was whether the petitioner had a protected liberty interest, and expectation in a "uniform" parole release date, pursuant to § 3041(a). Dannenberg did not expressly answer the question of whether § 3041(b) creates a liberty interest in the parole suitability determination. Further, Dannenberg did not expressly overrule the Supreme Court's previous holding in Rosenkrantz. "In light of the absence of a clear determination by the California Supreme Court that § 3041(b) grants the BPT limitless discretion to determine parole suitability, coupled with the Ninth Circuit's holding in [Biggs and] McQuillion that a protected liberty interest is created by § 3041(b)," the court rejects respondent's argument that there is no protected liberty interest in parole for California inmates.[3] McCauley v. Brown, No. C. 05-1817, 2006 WL 83050, at *2 (N.D. Cal. Jan. 12, 2006).

---

[3] The effect of Dannenberg on a prisoner's legitimate expectation of parole is not well-settled. The Ninth Circuit heard oral argument on this issue on March 16, 2006. However, the recent authority from the district courts in the Ninth Circuit weighs in favor of finding a federal liberty interest in parole. See e.g., Fredericks v. Knowles, No. CV 05-0334, 2006 WL 449105 (E.D. Cal. Feb. 23, 2006); Machado v. Kane, No. C 05-1632, 2006 WL 449146 (N.D. Cal. Feb. 22, 2006); McCauley v. Brown, No. C 05-1817, 2006 WL 83050, at *2 (N.D. Cal. Jan. 12, 2006); Lewis v. Solis, No. C 04-2152, 2005 WL 3454137 (N.D. Cal. Dec. 14, 2005). But see, Sass v. Cal. Board of Prison Terms, 376 F. Supp. 2d 975 (E.D. Cal. 2005).

**B. Parole Board Suitability Regulations**

Petitioner argues that the phrase "heinous, atrocious, or cruel," found in California's parole suitability regulations is too vague to provide guidance to the BPT and is therefore unconstitutional. Cal. Code Regs. Tit. 15, § 2402(c)(1). When setting a parole release date, BPT commissioners are guided by California Penal Code § 3041 in determining whether or not a parole release date should be set in the case of an individual inmate. Section 3041(b) provides that the board "shall set a release date" unless the "gravity of the offense is such that public safety requires a lengthier period of incarceration." Id. In determining whether or not an inmate is suitable for parole, the board must make decisions using the framework contained in Title 15 of California Code of Regulations § 2402. Id. Only after a prisoner is found suitable for parole can a release date be set. Id. at § 2402(a).

Section 2402 outlines the procedures and considerations to be used by the BPT in assessing whether a "life prisoner is suitable for release on parole." Id. at § 2402(a). The inquiry is largely discretionary but must consider all "relevant, reliable information available to the panel" including social history, past offenses, behavior in prison, and "any other information which bears on the prisoners suitability for release." See id. at § 2402(b); Allen, 482 U.S. at 375-76; Greenholtz, 442 U.S. at 16. Further, "circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." Id. Finally, § 2402 indicates which

circumstances tend to indicate unsuitability for parole. Id. at § 2402(c). Such circumstances include the gravity of the commitment offense, a previous record of violence, an unstable social history, sadistic sexual offenses, psychological factors, and institutional behavior. Id. at § 2402(c)(1)-(6).

**1. Vagueness of the "Gravity Offense" Regulation**[4]

Petitioner has asserted that the language "heinous, atrocious, or cruel" contained in the gravity of the commitment offense regulation is unconstitutionally vague. The Ninth Circuit remanded the case to evaluate whether the challenged regulation was unconstitutionally vague in the way it was applied to petitioner.

Section 2402(c)(1) indicates that a prisoner may be unsuitable for parole when:

> The prisoner committed the offense in an *especially heinous, atrocious, or cruel* manner.
> The factors to be considered include:
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> (C) The victim was abused, defiled or mutilated during or after the offense.
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

Id. (emphasis added).

Thus, an offense may be considered especially "heinous,

---

[4] While the court determines *infra* that there are adequate reasons for the BPT's determination that petitioner was unsuitable for parole aside from the board's finding of the applicability of the gravity of the offense regulation, the Ninth Circuit previously remanded this case for a determination regarding the term "heinous, atrocious, and cruel" as applied in California's Parole Regulations.

atrocious, or cruel" if one or more of the factors (A) through (E) is present in the commitment offense. Id. at § 2402(c).

A statute or regulation is void for vagueness "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and discriminatory enforcement." United States v. Doremus, 888 F.2d 630, 634 (9th Cir. 1989). Subjectivity of the decisionmaker, however, in the parole context does not render such regulations invalid. Greenholtz, 442 U.S. at 9-10 (finding that parole release decisions are inherently subjective). The Supreme Court has recognized that parole suitability regulations may be defined by general and subjective criteria because a parole suitability decision is "subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the board members based upon their experience." Id. Further, the gravity offense regulations are neither subjective nor indecipherable. The challenged regulation lists five factors that are interpreted by examining the facts and evidence underlying an inmate's conviction. Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E). The factors include the number of victims, the inmate's mens rea, and whether or not the victim was abused or defiled. Id. The facts of each case will determine whether a particular factor is present and thus whether the commitment offense was "heinous, atrocious, or cruel."

In the parole determination context, the notice inquiry in the vagueness analysis applies not to whether the *inmate* had sufficient notice of proscribed conduct, but to whether the *decision-makers*, in this case the BPT, had sufficient notice of

what the regulatory factors mean and how to apply them to particular cases. See Maynard v. Cartwright, 486 U.S. 356, 361 (1988) (analyzing the notice inquiry as it affects the ability of jurors to find aggravating circumstances). The proper inquiry is whether the regulations sufficiently guide and channel the board's review of whether or not an inmate is suitable for parole and "adequately safeguard[] against serious risks of error." Greenholtz, 442 U.S. at 15; see Arave v. Creech, 507 U.S. 463, 470 (1993); Maynard v. Cartwright, 486 U.S. at 361 (1988).

The Supreme Court has held that an otherwise facially vague statute may be saved by a construction that narrows the scope of the statute and channels the discretion of the decision-maker. See Proffitt v. Florida, 428 U.S. 242, 255-56 (1976) (interpreting "heinous, atrocious, or cruel" in a state death penalty aggravating circumstance case); Cf. Maynard, supra, 486 U.S. at 363. The Court upheld the use of the standard "heinous, atrocious, or cruel," as an aggravating circumstance when the language was limited and defined by judicial interpretation. Proffitt v. Florida, 428 U.S. 242, 255-56 (1976). In Proffitt, the Court found that Florida state court interpretations of the facially vague phrase limited application of the aggravating circumstance to those cases involving "conscienceless or pitiless crime which is unnecessarily torturous to the victim." Id. at 255. In reaching this conclusion, the Proffitt Court noted that the trial judge imposes the sentence of death and in doing so must weigh aggravating against mitigating circumstances. Id. at 251. In doing so the judge must focus on the "circumstances of the crime and the character of the individual defendant." Id.

Further, the judge must "focus on the individual circumstances of each homicide." Id. at 252. Such sentencing procedures ensure that the application of the death penalty is neither arbitrary nor capricious. Id. at 253.

In order for the parole regulations to survive a vagueness inquiry, the regulation must be sufficiently precise to adequately guide the board and prevent arbitrary and discriminatory enforcement. Doremus, 888 F.2d at 634. This can be achieved through either exactness of language or through limiting constructions, such as statutory sub-factors or judicial interpretation, that are known to the decision-maker. See Arave, 507 U.S. at 471. Such limiting constructions must genuinely narrow the class eligible for punishment from the general class of inmates. See id. at 475. Finally, the decision-maker must engage in an individualized inquiry that takes into account both the individual defendant and particular crime. See Proffitt, 428 U.S. at 251-52.

In California's parole suitability scheme, the five sub-factors outlined in § 2402(c)(1)(A)-(E) serve to limit the "heinous, atrocious, or cruel" language of the regulation and narrow the class of inmates that are found unsuitable for parole. The limiting sub-factors contain standards that are based on evidence in the record of each individual case. The sub-factors require the board to examine the facts of each inmate's case, considering both the inmate and the crime, to determine if any one of the five evidentiary sub-factors (A)-(E) are present. If any of the factors are present, the board may properly determine that the gravity of an inmate's conviction offense was "heinous,

atrocious, or cruel" and that the inmate is not suitable for parole.

Petitioner contends that the terms "dispassionate" and "exceptionally callous,"[5] contained within two sub-factors of § 2402(c)(1), are unconstitutionally vague, and therefore, do not cure the facial vagueness of the phrase "heinous, atrocious, and cruel." The term "dispassionate" is used in § 2402(c)(1)(B) which provides that a factor in the "heinous, atrocious, or cruel" analysis is whether "the [commitment] offense was carried out in a *dispassionate* and calculated manner, such as an execution-style murder." Dispassionate is defined as "free from the influence of passion or strong feeling." Webster's 3d. New Int'l. Dictionary (1961). By itself, the term makes clear that the sub-factor does not allow the board to consider crimes committed out of passion. However, the regulation also provides an illustration as to what type of manner of committing an offense qualifies as dispassionate, i.e. "an execution-style murder." Finally, the application of the sub-factor is also limited by the use of the term "calculated." In this context, the term "dispassionate" does not render the sub-factor unconstitutionally vague.

The term "exceptionally callous" is used in § 2402(c)(1)(D) which provides that a factor in the "heinous, atrocious, and

---

[5] Petitioner also takes issue with term "unusual" as it is used in § 2402(c)(4), relating to sadistic sexual offenses. However, because the panel did not discuss in detail the aspects of the petitioner's crime that could be analyzed under this subsection, the court does not find that the BPT found petitioner unsuitable for parole because he had committed a sexually sadistic offense. As such, the court will not determine the constitutionality of this subsection as the issue is not properly before the court.

cruel" analysis is whether "[t]he [commitment] offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering." The California Supreme Court has held that evidence of this sub-factor may be found where "the violence or viciousness of the inmate's crime [is] more than minimally necessary to convict him of the offense for which he is confined." Dannenberg, 34 Cal. 4th at 440. This judicial construction is sufficient to give the board notice of how to apply this sub-factor in its broad discretion such that there are adequate "safeguards against serious risks of error." Greenholtz, 442 U.S. at 15.

In petitioner's case, the BPT relied on the gravity of petitioner's commitment offense, applying sub-factors (A)-(E) to determine that Winston's offense was "heinous, atrocious, and cruel." The board found that petitioner was unsuitable for parole. In making the determination that petitioner's commitment offense was "heinous, atrocious, or cruel," the BPT considered that 1) petitioner assaulted multiple victims during his crime spree,[6] and 2) displayed an "exceptionally callous disregard for human suffering." In finding petitioner's "exceptionally callous disregard for human suffering," the board relied on the fact that petitioner killed, shot, injured or raped his victims in separate incidents over a period of time. (Answer, Ex. 3, at 30).

In it's reasoned decision denying petitioner's habeas petition, the Superior Court of California for the County of San Joaquin found that the regulations applied in petitioner's case

---

[6] This is listed as a factor to be considered in the "heinous, atrocious, and cruel" analysis, pursuant to § 2402(c)(1)(A).

are valid and were properly applied. Under the Antiterrorism and Effective Death Penalty Act's standard of review which applies to the court's review of this petition for habeas corpus, and in light of the Supreme Court's analysis in both Greenholtz and Proffitt, the court cannot find that the state court's decision is contrary to or an unreasonable application of established Supreme Court authority. See Early v. Packer, 537 U.S. 3 (2002). Therefore, the regulation challenged by the petitioner, § 2402(c)(1) and its sub-sections, are not vague and were not unconstitutionally applied to the petitioner.

Petitioner argues that "heinous, atrocious, and cruel" was held to be impermissibly vague by the United States Supreme Court. Petitioner relies upon Maynard v. Cartwright, which involved application of the standard in describing an aggravating circumstance which allowed a jury to impose the sentence of death in a capital murder case. 486 U.S. at 363-64. Maynard is distinguishable from this case, however, because the facially vague language was not limited, whether by statutory factors or judicial construction, to channel the discretion of the decision-maker. Id. at 364-65. The Court held, in the absence of any limiting construction, that the language "heinous, atrocious, or cruel" used in an aggravating circumstance was unconstitutionally vague because it allowed arbitrary or capricious imposition of the death penalty. Id. at 365.

Petitioner also cites People (Engert) v. Superior Court in support of the proposition that the phrase, "heinous, atrocious, or cruel" is unconstitutionally vague. 31 Cal. 3d 797, 802 (Cal. 1982). This case is also inapplicable to the facts presented by

petitioner's claims. In Engert the phrase was used as an element of the first degree murder offense rendering a defendant eligible for death or life without the possibility of parole. Id. The court held that the phrase was not precise enough to give adequate notice of what the state commands or forbids. Id. at 801. The California court distinguished Proffitt on two grounds. First, the California statute must be found beyond a reasonable doubt by a unanimous jury verdict. Id. at 803. Second, the California statute was analyzed under general due process considerations which require the statute to give notice that certain conduct is proscribed by the state. Id. at 801-02. In contrast, the Proffitt Court examined the language of the aggravating circumstance "only insofar as it is necessary to determine whether there is substantial risk that the Florida capital sentencing system" results in "capricious or arbitrary imposition of the death penalty." Id. at 805. Because petitioner's claims involve discretionary decisions closer akin to post-conviction aggravating factors than to elements of the offense, Engert is inapplicable.

**2. Other Factors Indicating Unsuitability for Parole**

The board considered other factors apart from the gravity of petitioner's commitment offense. Such considerations included, *inter alia*, petitioner's previous record of violence and his unstable social history.[7] These factors, without regard to the

---

[7] The magistrate judge concluded that the unstable social history criterion in § 2402(c)(3) is unconstitutionally vague. However, petitioner did not challenge this regulation or any terms in this regulation a unconstitutionally vague in his habeas petition. As such, the court will not decide the merits of a claim not properly before it.

commitment offense regulation are sufficient to substantiate the BPT's determination that the petitioner was unsuitable for parole. The court does not find that any of the parole suitability regulations are unconstitutionally vague, but also finds that there are other sufficient bases, apart from the gravity of the offense, to deny petitioner Winston's habeas petition. Therefore, petitioner's habeas petition must be denied because the board provided other adequate grounds for the denial of parole to petitioner.[8]

**CONCLUSION**

For the foregoing reasons, the court adopts the magistrate judge's recommendation but modifies his findings. Petitioner's request for a writ of habeas corpus is DENIED.

IT IS SO ORDERED.

DATED:March 30, 2006

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL JR.
United States District Judge

---

[8] Respondent also objects to the magistrate judge's finding regarding mootness. The court adopts the magistrate judge's analysis as it applies to this issue.